# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMANDA REID, individually and on behalf
of a class of persons similarly situated,

      Plaintiff,

v.

SANTANDER CONSUMER USA INC.,

      Defendant.

CIVIL ACTION NO. 18-cv-12470-WGY

## DECLARATION OF JAMES JACKSON IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS CASE

The undersigned, being duly sworn, does hereby depose and state as follows:

1.     I am employed by Santander Consumer USA Inc. ("SC") as Director of Collection, Early Stage.  I am responsible for, among other things, managing certain retail installment sales contracts owned and/or serviced by SC.  I have reviewed the records maintained by SC in the normal course of its business in connection with the retail installment account of Plaintiff Amanda Reid ("Plaintiff").  SC's business records are prepared at or near the time of the event by persons with knowledge of the event and from information transmitted by persons with knowledge of the event.  I make all statements based upon my personal knowledge, including my review of records SC maintains in the ordinary course of business.

2.     On May 9, 2013, Plaintiff entered into a certain Retail Installment Sale Contract with Village Motors North Inc. d/b/a Hyundai Village (the "Contract").  A true copy of the Contract is attached hereto as Exhibit A.   The Contract was subsequently assigned to SC.

3.      On or about January 5, 2016, Plaintiff was in default under the Contract.   At Plaintiff's request, SC offered and Plaintiff executed an Extension Agreement with SC to modify certain terms of the Contract.

4.      Plaintiff executed the Extension Agreement by affixing her e-signature on January 5, 2016.

5.      The following is a quick summary regarding the electronic signature process. When a modification of an existing agreement, like the Contract, requires a signature and the customer requests e-mail as the method of delivery, SC uses "ESIGN" through software called OneSpan, formerly known as Silanis.

6.      The customer receives an e-mail that has an embedded link.  She clicks on the embedded link which takes her to a document entitled ESIGN DISCLOSURE AND CONSENT. Attached as Exhibit B is a true copy of the ESIGN DISCLOSURE AND CONSENT generated when Plaintiff signed the Extension Agreement.   SC makes and keeps the ESIGN DISCLOSURE in the course of a regularly conducted business activity and it is SC's regular practice to keep such a document.

7.      The ESIGN DISCLOSURE AND CONSENT states that with her consent, SC can deliver electronically certain disclosures and information about products, services and accounts ("Required Information") in connection with the parties' relationship which should be retained by Plaintiff for her records. *Id.* at p. 1.

8.      The notice also contains a description of the customer's rights with respect to paper and electronic receipt of information. *Id.*

9.      The notice states "After you have read this information, if you agree to receive Required Information from you electronically, and if you agree to the general use of electronic

records and electronic signatures in connection with our relationship, please click the "I ACCEPT" button below. *Id.*

10.     Finally, the notice states in bold letters, **"I also consent to the use of electronic records and electronic signatures in place of written documents and handwritten signatures."** *Id.* at p. 2.

11.     By clicking the "ACCEPT" button, the customer receives the information electronically and is able to view the terms of the agreement.

12.     Plaintiff received the ESIGN DISCLOSURE AND CONSENT notification and clicked "ACCEPT." As a result, she received the Extension Agreement electronically.

13.     On the signature line of the Extension Agreement is a button, *Click to Sign.* The customer clicks on the signature line if she accepts the terms, and her signature is recorded.

14.     Once that is done, OneSpan sends SC back the completed packet and SC processes the modifications. SC is notified by an ESIGN report that the e-signature has been received.

15.     Plaintiff hit the "Click to Sign" button on the Extension Agreement. Attached as <u>Exhibit C</u> is a true copy of the notification received by SC that Plaintiff signed the Extension Agreement electronically. The notification is made and executed at the time Plaintiff executes the Extension Agreement. SC makes and keeps the notification document in the course of a regularly conducted business activity and it is SC's regular practice to keep such a document.

16.     When Plaintiff electronically signed the Extension Agreement, the ESIGN DISCLOSURE AND CONSENT and the e-signed Extension Agreement are both automatically imaged and retained by SC.

17.    The completed e-signature Extension Agreement is stamped with the signer's name, date and time of completion.  In this case, Plaintiff's electronic signature on the Extension Agreement was time-stamped on January 5, 2016 at 16:30:30 GMT.  Attached as <u>Exhibit D</u> is a true copy of the e-signed Extension Agreement.

**DECLARANT,**

James Jackson
Director of Collection, Early Stage.
Santander Consumer USA Inc.

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| AMANDA L REID<br>732 WASHINGTON AVE<br>REVERE MA 02151 | | HYUNDAI VILLAGE<br>24 COMMONWEALTH AVE<br>DANVERS MA 01923 ESSEX |

You, the Buyer (and Co-Buyer, if any), may pay the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2009 | TOYOTA CAMRY | 4T1BE46K49U406536 | XX personal, family or household<br>☐ business<br>☐ agricultural ☐ _____ |

## TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 0.00 |
|---|---|---|---|---|
| 21.00 % | $ 14833.03 | $ 18973.13 | $ 33806.16 | $ 33806.16 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 469.53 | Monthly beginning 07/13/2013 |

Or As Follows:

**Late Charge.** If payment is not received in full within 15 days after it is due, you will pay a late charge of 5% of the part of the payment that is late. The charge will not exceed $5 if you bought the vehicle primarily for personal, family, or household use.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

## ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---|
| 1 Cash Price (including $ 750.00 sales tax) | | $ 15250.00 | (1) |
| 2 Total Downpayment = | | | |
| Trade-in (2004 HONDA ACCORD SDN | | | |
| (Year)  (Make)  (Model) | | | |
| Gross Trade In Allowance | $ 2500.00 | | |
| Less Pay Off Made By Seller | $ 4867.13 | | |
| Equals Net Trade In | $ -2367.13 | | |
| + Cash | $ 1000.00 | | |
| + Other N/A | $ N/A | | |
| (If total downpayment is negative, enter "0" and see 4I below) | | $ 0.00 | (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | $ 15250.00 | (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf | | | |
| (Seller may keep part of these amounts:) | | | |
| A Cost of Optional Credit Insurance | | | |
| Paid to Insurance Company or Companies | | | |
| Life $ N/A | | | |
| Accident and Health $ N/A | | | |
| B Vendor's Single Interest Insurance | | | |
| Paid to Insurance Company | | $ N/A | |
| C Other Optional Insurance Paid to Insurance Company or Companies | | $ N/A | |
| D Optional Gap Contract | | $ N/A | |
| E Official Fees Paid to Government Agencies | | | |
| to N/A for N/A | | $ N/A | |
| to N/A for N/A | | $ N/A | |
| F Government Taxes Not Included in Cash Price | | $ N/A | |
| G Government License and/or Registration Fees | | | |
| REG FEE | | $ 25.00 | |
| H Government Certificate of Title Fees | | $ 75.00 | |
| I Other Charges (Seller must identify who is paid and describe purpose) | | | |
| to NESTOR FINANCIAL for Prior Credit or Lease Balance | | $ 1367.13 | |
| to HYUNDAI VILLAGE for DOC FEE | | $ 354.00 | |
| to ZURICH for COMPREHENSIVE | | $ 1902.00 | |
| to N/A for N/A | | $ N/A | |
| to N/A for N/A | | $ N/A | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 3723.13 | (4) |
| 5 Amount Financed (3 + 4) | | $ 18973.13 | (5) |

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
N/A , _____ Year _____ SELLER'S INITIALS _____

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. N/A
Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____

---

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
**Optional Credit Insurance**
☐ Credit Life ☐ Co-Buyer ☐ Both
☐ Credit Accident and Health (Buyer Only)

Premium:
Credit Life $ N/A
Credit Accident and Health $ N/A
Insurance Company Name
N/A
Home Office Address N/A

**YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.**

Credit life insurance and credit accident and health insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance or credit accident and health insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra costs. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit accident and health insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit accident and health insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ N/A N/A
Type of Insurance Term
Premium $ N/A
Insurance Company Name
Home Office Address N/A
☐ N/A N/A
Type of Insurance Term
Premium $ N/A
Insurance Company Name
Home Office Address N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____ Date _____
Buyer Signature

X _____ Date _____
Co-Buyer Signature

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

☐ **VENDOR's SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

Returned Check Charge: You agree to pay a charge of $ .10 if any check you give to us is dishonored.

---

## NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _amanda l Reid_ Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

**NOTICE TO THE BUYER: 1.** Do not sign this contract if any of the spaces intended for the agreed terms to the extent of then available information are left blank. 2. You are entitled to an exact copy of the contract you signed. 3. Under the law, you have the following rights, among others: — (a) to pay off in advance the full amount due and obtain a partial refund of the finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _amanda reid_ Date 05/29/13 Co-Buyer Signs X _____ Date _____
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signature X _____ Address _____

Seller signs HYUNDAI VILLAGE Date 05/29/13 By X _Barbara Holland_ Title Act Clerk

Seller assigns its interest in this contract to SANTANDER CONSUMER USA (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse ☐ Assigned without recourse XX Assigned with limited recourse
Seller HYUNDAI VILLAGE By X _Barbara Holland_ Title Act Clerk

ORIGINAL LIENHOLDER

LAW FORM NO. 553-MA 4/08

**OTHER IMPORTANT AGREEMENTS**

**1. FINANCE CHARGE AND PAYMENTS**

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Amount Financed, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2. YOUR OTHER PROMISES TO US**

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

**b. You may have to pay all you owe at once.** If you break your promises (default) or the default is material, we may demand that you pay all you owe at once after we give you any notice and opportunity to cure the default the law requires. Default means:
- You pay any payment more than 15 days late or not at all; or
- You start a proceeding in bankruptcy or one is started against you or your property; you give false, incomplete, or misleading information on a credit application; or you break any agreements in this contract; except that if you bought the vehicle primarily for personal, family or household purposes, we will only treat these events as defaults if they substantially impair the value of the collateral.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's reasonable fee and court costs, as the law allows.

**d. We may take the vehicle from you.** If you default and the default is material, we may take (repossess) the vehicle from you after we give you any notice and opportunity to cure the default the law requires. We may only take the vehicle if we do so peacefully and the law allows it. If the vehicle is purchased primarily for personal, family, or household use, we may not enter property you own or rent to take the vehicle unless you consent at that time or a court decides we may repossess the vehicle. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it as the law allows. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If the money from the sale is not enough to pay the amount you owe, you must pay the rest to us, unless both of the following things are true: (i) you bought the vehicle primarily for personal, family or household use; and (ii) the balance you owed on this contract was $2,000 or less at the time you defaulted or surrendered the vehicle. If both of these things are true, you will not owe the rest. If either of these things is not true you will owe us the rest as the law allows. If you owe the rest and do not pay it when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**
The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. It does **not** apply at all if you bought the vehicle primarily for personal, family, or household use.

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

**5. Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**6. Applicable Law**
Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only if this "personal, family or household" box in the "Primary Use For Which Purchased" section of this contract is checked. In other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-MA 4/68

EXHIBIT B

## ESIGN DISCLOSURES AND CONSENT

**The company that provided the attached documents to you through this service is required to obtain your consent for the following:**

We are required by law to provide you with certain disclosures, documents and information about the products, services or accounts you may receive or access by doing business with us ('Required Information'). With your consent, we can deliver Required Information to you by a) displaying or delivering the Required Information electronically; and b) requesting that you print or download the Required Information and retain it for your records. Your consent also permits the general use of electronic records and electronic signatures in connection with the Required Information.

You may request to receive Required Information on paper, but if you do not consent to its electronic delivery, we cannot proceed to do business with you in connection to the products, services or account.

If you consent to electronic delivery of Required Information, you may withdraw that consent at any time by calling us. However, if you withdraw your consent we will not be able to continue to do business with you in connection with the products, services or account.

If you consent to electronic disclosures, that consent applies to all Required Information we give you or receive from you in connection with our relationship and the associated notices, disclosures, and other documents.

Even if you consent to receive the Required Information electronically, it may be necessary for certain Required Information or other communications to be delivered to or from you on paper to a specified address.

You agree to download or print out Required Information when we advise you to do so and keep it for your records. If you are unable to print or download any Required Information, you may call us and request paper copies. If you need to update your e-mail address or other contact information with us, you may do so by calling us and requesting the necessary updates.

**I have read the information about the use of electronic records, disclosures, and notices, and consent to the use of electronic records for the delivery of Required Information in connection with our relationship. I also consent to the use of electronic records and electronic signatures in place of written documents and handwritten signatures. I have been able to use a computer, tablet or mobile phone to view this information through web pages and e-mail and acknowledge that I can also view information presented in a PDF format file on those same devices. I agree and give my consent by clicking on the "I Accept" button below.**

**EXHIBIT C**

| nInternalSo | dSourceCreated | cDocumentTemplateName | cCustomerName | dLoadTime | cStatus |
|---|---|---|---|---|---|
| [redacted] | | | | | |
| 1203856 | Jan 5 2016 10:30AM | SCUSA_Retail_Extension_Letter_MA | Amanda Reid | Jan 5 2016 11:00AM | PACKAGE_COMPLETE |
| [redacted] | | | | | |



[redacted]

EXHIBIT D



1/5/2016

Amanda Reid
732 washington ave
revere, MA 02151

**Account Number:** ▮▮▮▮▮
**Outstanding Balance:** $16,044.19

### EXTENSION AGREEMENT ("Agreement")

The Borrower (hereinafter referred to as "you" or "your") has requested that Santander Consumer USA Inc. ("SCUSA") grant you a extension with respect to payments that are past due on your Loan or Retail Installment Contract (the "Contract") currently held or serviced by SCUSA. In consideration of your request, and for other good and valuable consideration, you and SCUSA agree as follows:

**EXTENSION.** SCUSA agrees to extend the payments on your Contract in accordance with the terms set forth below. **Please be advised that this Agreement will be revoked and null and void without further notice if you fail to sign and return this Agreement by** 1/18/2016 **(the "Return Date").** The Contract will be extended and your next installment payment will be due on 12/13/2015 , provided you sign and return this Agreement to SCUSA by the Return Date, and make any required payments set forth below.

| Original Payment Due | Amount | | Extension Due Date |
|---|---|---|---|
| 10/13/2015 | $469.53 | Not due until | 11/13/2015 |
| 11/13/2015 | $469.53 | Not due until | 12/13/2015 |
| | | Not due until | |

Following the extended payments, your next regular payment due date is 12/13/2015 and every month thereafter until maturity. Your new maturity date is 10/13/2019 .

You acknowledge and understand that: (a) this Agreement does not defer any interest on the payment(s) you have not made; (b) this Agreement only modifies your contractual obligation to make certain payments on specific dates, and that all Contract terms and provisions not expressly modified by this Agreement remain unchanged and in full force and effect; (c) the next payment you make will be applied to the interest earned on the unpaid amount financed from the date SCUSA last received a payment from you, and the remainder of the payment, if any, will be applied to reduce the unpaid amount financed; (d) as a result of this Agreement, even if you make subsequent payments on time, the unpaid amount financed will not be reduced as rapidly as it would have under the original payment schedule, which may result in you paying more finance charges over the term of the Contract than originally disclosed; and (d) interest will be charged for the entire period of extension under this Agreement.

**PAYMENTS/EXTENSION FEE.** In order to make this extension effective, you will make a payment of $0.00 , which will be applied to your balance in accordance with the Contract. In addition, you will pay a Extension Fee of $0.00 .

**INSURANCE.** You acknowledge and understand that this Agreement does not include a extension of insurance or GAP coverage, if any, for which a separate charge was included in the Contract. You assume full responsibility for extending such coverage.

**NOTICE.** If you have filed bankruptcy, this Agreement is not a reaffirmation of debt, and is not an attempt to collect a debt.

**RELEASE.** In consideration of SCUSA's agreement to forbear from exercising its remedies under the Contract by reason of your default in failing to pay as agreed, you hereby release and hold harmless SCUSA, its affiliates, and respective officers, directors, employees, agents, successors, and assigns, from any and all claims, actions, and causes of action arising out of or in any way connected with the Contract, or SCUSA's servicing of the Contract, from the date of the Contract through the date of this Agreement.

**DEFAULT.** IF YOU FAIL TO MAKE THE FIRST OR FUTURE DEFERRED INSTALLMENT PAYMENTS UNDER THIS AGREEMENT IN A TIMELY MANNER, YOU WILL BE IN DEFAULT UNDER THE CONTRACT AND BECOME SUBJECT TO ANY AND ALL REMEDIES AVAILABLE TO SCUSA UNDER THE CONTRACT.

**ARBITRATION.** As additional consideration for SCUSA's agreement to forbear from exercising its remedies under the Contract, you and SCUSA agree that upon written request by either party that is submitted according to the rules for arbitration, any Claim, except those specified below, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the Rules of the chosen Administrator, and (iii) this Arbitration Provision.

(a)   Claims Covered. "Claim" means any claim, dispute, or controversy now or hereafter existing between you and SCUSA, including without limitation, any claims arising out of, in connection with, or relating to the Contract, and any modification, deferment, extension, application, or inquiry of credit or forbearance of payment; any trade-in of a vehicle; any products, goods and/or services, including the installation thereof, purchased in connection with the Contract; any insurance, service contract, extended warranty,

P.O. Box 961245, Fort Worth, TX 76161 • www.SantanderConsumerUSA.com • 888.222.4227
© 2014 Santander Consumer USA Inc. All rights reserved. SC-SER_41015-12_102814



auto club membership or debt cancellation agreement purchased in connection with the Contract; the closing, servicing, collecting or enforcing of the Contract; whether the claim or dispute must be arbitrated; the validity of this Agreement; any negotiations between you and SCUSA`; any claim or dispute based on an allegation of fraud or misrepresentation, including without limitation, fraud in the inducement of this or any other agreement; and any claim or dispute based on state or federal law, or an alleged tort.  You and SCUSA also agree to submit to final, binding arbitration, any claim or dispute that you or SCUSA has against all persons and/or entities (i) who are involved with the Contract, (ii) who signed or executed any document relating to the Contract or any Claim, and (iii) who may be jointly or severally liable to either you or SCUSA regarding any claim.

EXCLUSION FROM ARBITRATION.  The following types of matters will not be arbitrated:

- The exercise of extra-judicial or self-help repossession under applicable law or any action seeking to enforce a security interest or any action to effect the sale or transfer of the property being foreclosed (collectively "Excluded Actions").  However, any claim or dispute arising out of or relating to the exercise of such Excluded Actions is subject to arbitration in accordance with this Agreement; or

- Any Claim where all parties collectively (including multiple named parties( seek, in the aggregate, #15,000 or less in total monetary relief, including but not limited to compensatory, statutory and punitive damages, restitution, disgorgement, and costs and fees (including attorney's fees); or any Claims brought in a small claims court.  If you attempt to assert any Claim on behalf of a putative class of persons, in violation of other terms in this Agreement, the value of such Claim will, for purposes of this exclusion, be deemed to exceed $15,000.  If any party fails to specify the amount being sought for any relief, or any for or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.

Participation in a lawsuit or seeking enforcement of this action by a court shall not waive the right to arbitrate.

(b) <u>Commencing Arbitration</u>.  The party initiating arbitration must choose one of the following arbitration Administrators and follow the rules and procedures that govern disputes established by the chosen Administrator ("Rules"): (1) American Arbitration Association, 335 Madison Avenue, New York, NY 10017-4605, www.adr.org, or (2) National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, www.arbitration-forum.com.   The Rules and form of demand for arbitration are available from each Administrator.  SCUSA or you may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction.  Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of final judgment.

(c) <u>Place of Arbitration</u>.  Arbitration shall be conducted in the county of your residence, unless parties agree to another location.

(d) <u>No Class Actions/No Joinder of Parties</u>.  Claims and disputes by or on behalf of other persons not a party to the Contract will not be arbitrated in any proceeding considering your Claims.  You may not serve as a class representative or participate as a member of a class of claimants or act as a private attorney general with respect to any Claim against any party entitled to compel arbitration under this Agreement.

(e) <u>Governing Law</u>.  The Federal Arbitration Act, 9 U.S.C. §§1 et seq., shall govern this arbitration provision.  The arbitrator shall make his or her decision in accordance with applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall be empowered to award any damages or other relief provided for under applicable law.  Judgment upon any arbitration award may be entered in any court having jurisdiction.

(f) <u>Costs of Arbitration</u>.  SCUSA will advance any arbitration filing fee, administrative fee, or hearing fee, which you are required to pay to pursue a Claim in arbitration, if you are unable to pay the filing fee and you tell SCUSA in writing that you are unable to pay such filing fees.  The arbitration will decide who will be ultimately responsible for paying those fees.  In no event will you be required to reimburse SCUSA for any arbitration filing, administrative or hearing fees in an amount greater than what your court costs would have been if the Claim had been resolved in a court having jurisdiction.  There may be other expenses during arbitration, such as attorney's fee, costs of travel to the arbitration, experts and witnesses.  The applicable arbitration Rules will determine who will pay such amounts.  If there are no such rules, each party will bear their own expenses.

(g) <u>Arbitrator's Award</u>.  The arbitrator's award will be final and binding except for: (i) any appeal right under the FAA; and (ii) the right to appeal any award in the amount of $0.00 or in the amount of $100,000 or more ("Appealable Award").  For any Appealable Award, any party may appeal the award to a three arbitrator panel appointed by the Administrator, which will consider de novo any aspect or all aspects of the Appealable Award.  The right to a de novo appeal includes the right to introduce new evidence and participate in a new evidentiary hearing, at either party's request.  The panel's decision will be final and binding, except for any appeal right under the FAA.  The parties have the right to appeal as stated herein notwithstanding any language to the contrary in the contract documents or elsewhere in this arbitration agreement and notwithstanding any conflicting rules of the Administrator to the contrary.  To the extent any rules of the Administrator can be read to deprive the parties of the right to an appeal, this clause overrides those rules.   In the event the Administrator does not have in effect rules that would govern an appeal of the underlying award, the procedural rules employed during the initial arbitration proceeding shall apply, or any other set of rules agreed to by the parties.  Unless applicable law provides otherwise, the appealing party will pay the appeal's costs (i.e., the amounts owed to the Administrator and the arbitrators), regardless of its outcome.

(h) <u>Other Important Agreements</u>.  This Agreement applies even if the Contract has been paid in full, charged-off by SCUSA, or discharged in bankruptcy.  If any part of this Agreement or the arbitration Rules is determined to be invalid or unenforceable, it shall not impair or affect the enforceability of the other teams of this Agreement, the arbitration Rules, or the Contract.  In the event of a conflict or inconsistency between this Agreement and the arbitration Rules or the other provisions of the Contract, this Agreement shall govern.

P.O. Box 961245, Fort Worth, TX 76161 • www.SantanderConsumerUSA.com • 888.222.4227
© 2014 Santander Consumer USA Inc. All rights reserved. SC-SER_41015-12_102814



**Special Acknowledgments. You understand (i) the Vehicle and other goods, products and services related to the contract, as well as the funding for your credit transaction, come in whole or in part from sources outside this state, which constitute interstate commerce within the meaning of the Federal Arbitration Act; and (ii) a court or jury will not hear or decide any Claim governed by this Agreement. You further acknowledge that you have been informed of the consequences of failing to make the first or future extended installment payments in a timely manner under this Agreement.**

**TELEPHONE MONITORING.** You consent to and agree that SCUSA may monitor and record telephone calls made or received by SCUSA or its agents regarding the Contract or your account to assure the quality of our service or for other reasons.

**CONSENT TO TELEPHONE / CELL PHONE CONTACTS AND USE OF AUTOMATION TO CONTACT YOU.** In order for us to service the Contract or your account or to collect any amounts you owe, you consent to and agree that SCUSA may make calls to you using prerecorded/artificial voice messages and/or through the use of an automatic dialing device at any telephone number you provide to SCUSA, any other telephone number currently associated with your account or any telephone number obtained at any time by SCUSA in connection with the Contract or your account, including a mobile or wireless telephone number or other device that could result in charges to you. Your express consent applies to any email address or telephone numbers we obtain or you provide in any manner and at any time, including an email address or cellular telephone number for which you may incur voice, data or other charges.

**You agree and understand that your authorization may be revoked at any time via (i) telephone by calling SCUSA at 1 (888) 222-4227 or (ii) written correspondence to Santander Consumer USA, Inc., Attn: Revocation, P.O. Box 961245, Fort Worth, TX 76161 or (iii) electronic mail at stopcalls@santanderconsumerusa.com.**
This Agreement may be executed in one or more counterparts, each of which when so executed shall be deemed to be an original. This Agreement may be executed by facsimile signatures, and shall be valid and binding on any party signing this Agreement in such fashion. You agree to sign and return this Agreement to SCUSA at the address and fax number shown above.

E-SIGNED by Amanda Reid
on 2016-01-05 16:30:30 GMT                January 05, 2016

_____          _____          _____          _____
Buyer                                      Date             Santander Consumer USA Inc.                 Date


_____          _____
Co-Buyer                                   Date

P.O. Box 961245, Fort Worth, TX 76161 • www.SantanderConsumerUSA.com • 888.222.4227
© 2014 Santander Consumer USA Inc. All rights reserved. SC-SER_41015-12_102814